**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| KIMBERLY LOWE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  8:18-cv-2667-T-33SPF |
| ) | |
| STME, LLC d/b/a MASSAGE ENVY- ) | |
| SOUTH TAMPA, ) | |
| ) | |
| Defendant. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

**DEFENDANT STME, LLC's d/b/a MASSAGE ENVY – SOUTH TAMPA**
**MOTION TO DISMISS PLAINTIFF KIMBERLY LOWE'S SECOND AMENDED**
**COMPLAINT AND MEMORANDUM IN SUPPORT**

Defendant, STME, LLC d/b/a MASSAGE ENVY – SOUTH TAMPA ("STME"), by and

through its undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, respectfully moves the Court to enter an order dismissing the Second Amended

Complaint ("SAC") filed by Plaintiff Kimberly Lowe ("Lowe") with prejudice, and as grounds

therefore, states as follows:

**MOTION TO DISMISS**

1.      This is Lowe's third wild swing at stating a claim for relief based on the random

emergence of a horrible, deadly disease in West Africa – and this is Lowe's third strike out.

Lowe and her counsel have approached pleading as a sport and this litigation as Lowe's personal

practice field to swing wildly at legal claims that lack factual and legal merit on their face, that

are internally inconsistent, and that directly contradict her prior representations to the U.S.

Eleventh Circuit Court of Appeals in <u>Lowe v. STME, LLC</u>, No. 18-11121-GG (11th Cir.). Each

time at bat, Lowe has vexatiously enlarged these proceedings and forced the further expenditure of substantial resources to defend against her meritless claims.

2.      On February 5, 2019, the Court dismissed Lowe's association discrimination claim under 42 U.S.C. §1981 ("Section 1981"), with prejudice, because Lowe did not have an existing association with a person of a different race at the time of her discharge and her pleading was not amenable to further amendment. (Doc. 24, pg. 9). The Court also dismissed Lowe's Section 1981 retaliation claim but provided one more opportunity for Lowe to properly allege a statutorily protected activity. Id. at pg. 11.

3.      Notwithstanding the Court's instruction regarding how to properly plead a Section 1981 retaliation claim (Doc. 24, pgs. 10-11), Lowe still fails to allege that she communicated any belief to STME that race discrimination was occurring. Lowe's Section 1981 retaliation claim fails as a matter of law on this basis. Demers v. Adams Homes of Northwest Florida, Inc., 321 Fed.Appx. 847, 852 (11th Cir. 2009) ("to engage in protected activity, the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred") (internal quotation omitted).

4.      According to Lowe, she "vehemently objected to Wuchko's[1] threat to fire her and told Wuchko that his fears [of her contracting Ebola during her trip] were ridiculous, his actions were not right, and made it abundantly clear that she believed this ultimatum was wrong." (Doc. 25, ¶24). Lowe further contends that she engaged in protected activity "by her refusal to cancel her … trip to Ghana, and advising Wuchko of her intent to proceed with her plans … and thus

---

[1] "Wuchko" refers to STME co-owner, Ron Wuchko.

necessarily associate with Ghanaians despite Massage Envy's erroneous belief that **Ghanaians**[2] had Ebola." Id. at ¶25. Lowe's allegations fail – on their face – to convey any opposition to race based discrimination. Significantly, prior to her termination, Lowe never mentioned race, or discrimination, or race discrimination, or "black Africans," or any association with "black Africans" (or Ghanaians), or any other hint or suggestion of unlawful conduct by STME based on race. This means that STME would somehow have to guess that Lowe was opposing race discrimination against "black African" Ghanaians or "black Africans" generally. Of course, this presumes that Lowe ever held a good-faith, reasonable belief that STME was engaged in purposeful race discrimination against "black Africans" in the first place, a presumption that is clearly and completely belied by the long and well developed record of this case of which the Court may take judicial notice.

5.      As the record makes clear, Lowe never alleged that she was subjected to race discrimination – much less retaliated against for opposing race discrimination – when she filed her Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on December 2, 2014 (just over a month after her discharge) (Doc. 4-10), or when she filed her proposed complaint-in-intervention in the EEOC's prior suit[3] on June 20, 2017 (more than two and a half years after her discharge) (Doc. 4-3), or for that matter when she filed her original Complaint in this action on October 3, 2018 (almost four years after her discharge) (Doc. 1-1).[4] It simply makes no sense that STME should have somehow divined that Lowe was

---

[2] As discussed more fully, *infra*, Lowe's Section 1981 retaliation claim is now premised on STME's alleged belief that "Ghanaians" – not "black Africans" – had Ebola.
[3] EEOC v. STME, LLC d/b/a Massage Envy – South Tampa, Case No. 8:17-cv-977-MSS-CPT (M.D.Fla.2017) ("*Lowe I*").
[4] As discussed more fully, *infra*, Lowe improperly attempted to bring a "pure and simple" national origin discrimination claim (against Ghanaians) – not a race discrimination claim – under Section 1981.

opposing race discrimination against "black Africans" at the time of her discharge when Lowe herself only reached this disingenuous conclusion approximately four years later.

6.      Because STME would somehow have to divine that Lowe was opposing discrimination based on race, her Section 1981 retaliation claim fails as a matter of law on this basis.

7.      As is clear from the face of the SAC, Lowe held no good-faith, reasonable belief that STME engaged in race discrimination against "black Africans," as required to support a retaliation claim. See, Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956, 960 (11th Cir. 1997) (concluding that employee's opposition to "racially derogatory comment did not constitute opposition to an unlawful employment practice as a matter of law" and employee "did not have an objectively reasonable belief that he was opposing an unlawful employment practice"). First, Lowe had no existing association with a "black African" person at the time of her discharge. Second, Lowe makes no allegation (beyond self-serving conclusory allegations), which show any purposeful discrimination by STME against "black African" Ghanaians (or "black Africans" generally) on the basis of race. Third, Lowe's allegation that STME feared that she – a "white American citizen" – could contract Ebola (i.e., have Ebola) and spread it to America (Doc. 25, ¶¶19-20) is internally inconsistent with – and disproves – her nonsensical allegation that STME believed that only "black Africans" had Ebola or that she could only contract Ebola from "black African" Ghanaians (as opposed Ghanaians of some other race) (Doc. 25, ¶¶ 29, 34-36). Because Lowe held no good faith, reasonable belief that STME was engaged in race discrimination against "black Africans," her Section 1981 retaliation claim fails as a matter of law on this basis.

8.      In her appeal in Lowe v. STME, LLC, No. 18-11121-GG (11th Cir.) (Doc. 22-4), Lowe represented to the Eleventh Circuit that STME terminated her employment because of her

association with her sister who STME believed to be disabled by Ebola. Presuming Lowe's sister is also a "white American citizen" (like Lowe), Lowe's representation to the Eleventh Circuit directly conflicts with her Section 1981 race discrimination claim (against "black Africans") in this action and is clear evidence of the frivolity of Lowe's claim.

9.      For the reasons set forth herein, STME respectfully requests that the Court dismiss Lowe's Section 1981 retaliation claim, with prejudice.

10.     Lowe also brings a claim for "perceived handicap" discrimination under the Florida Civil Rights Act ("FCRA"), Chapter 760, *Fla. Stat*. in this action. (Doc. 25).[5] This is the same "perceived handicap" claim that Lowe sought to bring in *Lowe I*. (Doc. 4-3).

11.     Disability discrimination claims under the FCRA are analyzed under the same framework as disability discrimination claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12111, *et seq*. Samson v. Federal Exp. Corp., 746 F.3d 1196, 1200 n. 2 (11th Cir. 2014). A plaintiff is "regarded as" having a disability (i.e., "perceived handicap") if she "has been subjected to an action prohibited under [the FCRA] because of an actual or perceived physical or mental impairment ..." 42 U.S.C §12102(3)(A). Because Lowe makes no claim that STME terminated her employment because she had Ebola or because STME believed that she did, Lowe fails to meet the FCRA's threshold definition of "disability" and her "perceived handicap" claim fails as a matter of law.

12.     Lowe's FCRA "perceived handicap" claim is "factually and substantively identical" to the EEOC's ADA "regarded as" claim in *Lowe I*, and presents "common questions of fact and law," which were previously adjudicated by the Court on the merits. (Doc. 4-2, ¶¶4-5).

---

[5] The Court did not previously dismiss Lowe's "perceived handicap" claim to preserve Lowe's ability to assert this claim in state court." (Doc. 24, pg. 12).

13.     *Lowe I* was premised on Lowe's specific Charge and the EEOC sought specific make whole relief for Lowe including reinstatement, back-pay, prejudgment interest, out-of-pocket expenses, and compensation for emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and punitive damages. (Doc. 4-4, pgs. 6-7). Lowe admits that she is the aggrieved party for whom the EEOC was seeking relief. (Doc. 4-2, ¶3).

14.     The EEOC was in privity with Lowe in *Lowe I* and never abandoned her interests.

15.     Lowe makes no allegation that she ever communicated any divergence of interest to the EEOC at any time during the pendency of *Lowe I*.

16.     Not only does Lowe fail to state a claim for relief under the FCRA, her FCRA claim is barred by collateral estoppel and *res judicata*.

17.     For the reasons set forth herein, STME respectfully requests that the Court exercise its supplemental jurisdiction to dismiss Lowe's FCRA "perceived handicap" claim, with prejudice.

**Record of *Lowe I***

18.     This litigation all began with Lowe's discharge over four years ago on October 22, 2014.

19.     Lowe filed a Charge (Doc. 4-10) with the EEOC on December 2, 2014 alleging that Wuchko terminated her employment on October 22, 2014 three days prior to her impending trip to Ghana because he believed that she "**could** come into contact with **a person** having Ebola and could bring it back home and to work after [her] trip [emphasis added]."[6] Id. Lowe further alleged that STME "perceived [her] as disabled or perceived [her] as having potential to become disabled" in violation of the ADA. Id.

20.     On September 6, 2016, the EEOC issued a Letter of Determination ("LOD") (Doc. 4-11) summarizing its investigative findings. The EEOC credited Lowe's allegation that she was

---

[6] This allegation has somehow morphed into an allegation in this action that STME sought to prevent Lowe from associating with "black African" Ghanaians because of its erroneous belief that only "black Africans" had Ebola.

discriminated against in violation of the ADA "when … [STME] regarded her as disabled and terminated her 3 days prior to a planned trip to Ghana because … [STME] believed she **might** contract Ebola [emphasis added]." <u>Id</u>.

21.     The EEOC filed suit against STME on April 26, 2017 alleging that STME violated the ADA "…by terminating Lowe because it regarded her as disabled because of [sic] it believed that she **could** contract Ebola [emphasis added]." (Doc. 4-1).

22.     Lowe moved to intervene in *Lowe I* on June 20, 2017 to assert disability discrimination claims under the ADA and FCRA that are factually and substantively identical to the EEOC's ADA "regarded as" claim in *Lowe I*. (Doc. 4-2).

23.     Shortly thereafter, the EEOC filed an amended complaint on June 25, 2017 adding a claim for association discrimination under the ADA "based upon [Lowe's] association with people in Ghana whom Massage Envy believed to be disabled by Ebola." (Doc. 4-4, ¶¶28-29).

24.     The Court stayed discovery in *Lowe I* on October 6, 2017. (Doc. 22-1).

25.     On November 22, 2017, the EEOC moved the Court to file a second amended complaint to bring an ADA interference claim. (Doc. 4-5).

26.     On February 15, 2018, the Court issued an Order dismissing the EEOC's amended complaint pursuant to Federal Rule 12(b)(6); and denying the EEOC's proposed second amended complaint on the grounds of futility and failure to exhaust administrative remedies. (Doc.  4-7, pgs. 3-15). The Court's Order was on the merits. Upon disposing of the EEOC's case, the Court directed the clerk to close the case and terminate all pending motions as "moot," which included Lowe's then pending motion to intervene. <u>Id</u>. at 15.

27.    More than a month after the Court dismissed *Lowe I*, Ryan Barack and Michelle Nadeau of Kwall Barack Nadeau PLLC entered their appearance as additional counsel for Lowe on March 28, 2018. (Docs. 22-2, 22-3).

28.    Lowe has appealed the Court's termination of her motion to intervene as "moot" upon the dismissal of *Lowe I*, as well as, the dismissal of *Lowe I*, and the denial of the EEOC's motion for leave to file a second amended complaint. (Doc. 22-4). Lowe's appeal is currently pending before the Eleventh Circuit.

## MEMORANDUM OF LAW

In considering a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., factual allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). However, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts "… need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." Campos v. I.N.S., 32 F.Supp.2d 1337, 1343 (S.D.Fla.1998); see also, Bell v. J.B. Hunt Transp., Inc., 427 Fed.Appx. 705, 707 (11th Cir. 2011) ("conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal").

Courts may consider a document attached to a motion to dismiss without converting it into a motion for summary judgment if the document is (1) central to the plaintiff's claim; and (2) undisputed. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007). "'Undisputed' … means that the authenticity of the document is not challenged." Horsley v.

Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Pleadings, orders and documents in a prior proceeding are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" in accordance with Fed.R.Evid. 201(b). See, Horne v. Potter, 392 Fed.Appx. 800, 802 (11th Cir. 2010) (concluding the district court properly took judicial notice of documents in plaintiff's first case in dismissing plaintiff's second case based on res *judicata*) (citation omitted).[7]

"As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the complainant is required to file a complaint with the FCHR [Florida Commission on Human Relations] within 365 days of the alleged violation." Woodham v. Blue Cross and Blue Shield of Florida, Inc., 829 So.2d 891, 894 (Fla. 2002). In lieu of filing a complaint with the FCHR, the complainant may file a complaint with the EEOC or local fair employment practices agency. §760.11(1), *Fla. Stat.* Lowe filed a Charge with the EEOC on December 2, 2014 (Doc. 4-10), which is central to her allegation that she has satisfied all administrative prerequisites to the institution of this suit. (Doc. 21, ¶34). The Court may take judicial notice of Lowe's Charge (Doc. 4-10) and the EEOC's LOD (Doc. 4-11) without converting STME's motion to dismiss into one for summary judgment. See, e.g., Jones v. Bank of America, 985 F.Supp.2d 1320, 1326 (M.D.Fla.2013) (considering plaintiff's FCHR "no cause" determination, charge, intake questionnaire, rebuttal to the position statement, and FCHR investigative memorandum in dismissing plaintiff's claims with prejudice for failure to exhaust administrative remedies).

A.    **Lowe fails to state a claim for retaliation under Section 1981.**

  i.    **Lowe fails to allege that she communicated any belief to STME that race discrimination was occurring.**

---

[7] As evidenced by the SAC, *Lowe I* is central to Lowe's claims in this action. (Doc. 25, ¶¶ 41-60).

"To state a retaliation claim under §1981, a plaintiff must allege a defendant retaliated against [her] because the plaintiff engaged in statutorily protected activity." Jimenez v. Wellstar Health System, 596 F.3d 1304, 1311 (11th Cir. 2010). "As with other statutory retaliation claims, such a claim under §1981 requires that the protected activity involve the assertion of rights encompassed by the statute." Id. at 1311; see also, McQueen v. Wells Fargo, 573 Fed.Appx. 836, 839 (11th Cir. 2014) ("Title VII and §1981 prohibit employers from taking adverse actions against employees in retaliation for their **opposition to statutorily prohibited racial discrimination** [emphasis added]"); and Adams v. Cobb Cty. Sch. Dist., 242 Fed.Appx. 616, n 6 (11th Cir. 2007) (Section 1981 "prohibits an employer from retaliating against its employee as a response to the employee's **complaint of race-based discrimination** [emphasis added]"). "Conclusory allegations of retaliation are insufficient to establish a claim under Section 1981." Hearn v. International Business Machines, No. 8:13-cv-827-T-EAJ, 2013 WL 5499610, at *3-4 (M.D.Fla. Oct. 1, 2013). "**[I]n order to constitute statutorily protected activity capable of supporting a §1981 retaliation claim, an employee's complaint must reasonably convey that she is opposing discrimination based specifically upon race, versus some other type of discrimination or injustice generally** [emphasis added]." Id. at *4. An employee cannot sufficiently plead a Section 1981 retaliation claim by relying on the employer to infer that race discrimination has occurred.  (Doc. 24, pg. 10); see also, Demers, 321 Fed.Appx. at 852; Brown v. Florida Gulf Coast University Board of Trustees, No. 2:18-cv-157-FtM-29MRM, 2018 WL 5971661, at *8 (M.D.Fla. November 14, 2018) (dismissing plaintiff's retaliation claim for plaintiff's failure to state whether she communicated her belief that sex discrimination was occurring); and  Lard v. Ala. Alcoholic Beverage Control Bd., No. 2:12-cv-452-WHA, 2012 WL 5966617, at *3 (M.D.Ala. Nov. 28, 2012) (employee's refusal to comply with defendant's order

to resign was not protected activity where employee made "no allegation that [he] complained that his being directed to resign was an act of racial discrimination before being terminated").

Here Lowe alleges that she engaged in "protected conduct" by vehemently objecting to Wuchko's threat to terminate her employment, refusing to cancel her trip to Ghana to visit her sister, and advising Wuchko of her intent to proceed with her travel plans. (Doc. 25, ¶25). Lowe further alleges that she "told Wuchko that his fears [of her contracting Ebola] were ridiculous, his actions were not right, and [she] made it abundantly clear that she believed this ultimatum was wrong." (Doc. 25, ¶24).[8] These allegations – on their face – fail to communicate any purported belief by Lowe that race discrimination was occurring.[9] Accordingly, Lowe's Section 1981 retaliation claim fails as a matter of law on this basis. See Willmore-Cochran v. Wal-Mart Associates, Inc., 919 F.Supp.2d 1222, 1234 (N.D.Ala.2013) ("[p]laintiff's vague claim that she complained about 'mismanagement in the Pharmacy' does not reasonably support a contention that she thereby raised any issue of discrimination" that might be protected by Section 1981).

Significantly, Lowe has chosen to refer to "Ghanaians"– and not "black Africans" – in the various paragraphs of her SAC relating to her alleged "protected conduct." See, e.g., Doc. 25, ¶¶24, 25, 27. Lowe's repeated references to "Ghanaians" in these paragraphs harkens back to her original failed attempt to bring a "pure and simple" national origin discrimination claim (against

---

[8] Obviously, Wuchko's threat to terminate Lowe's employment if she did not cancel her trip to Ghana preceded Lowe's alleged "vehement objections" to his threat. This negates any suggestion by Lowe that Wuchko terminated her employment because of her alleged "vehement objections" to his threat and leaves only the issue as to whether Lowe's refusal to cancel her trip amounted to protected activity. As the Court previously explained, this alone is insufficient to constitute a protected activity. (Doc. 24, pg. 11).

[9] By refusing to cancel her trip to Ghana, Lowe contends that she would "thus, necessarily associate with Ghanaians despite Massage Envy's erroneous belief that Ghanaians had Ebola." (Doc. 25, ¶25). This in no way conveys any opposition by Lowe to alleged discrimination against "Ghanaians" – much less "black African" Ghanaians – **on the basis of race**.

Ghanaians) under Section 1981. (Doc. 14, pg. 11). <u>Tippie v. Spacelabs Medical, Inc.</u>, 180 Fed.Appx. 51, 56 (11th Cir. 2006) ("[b]y its very terms §1981 applies to claims of discrimination based on race, not national origin"). Lowe subsequently amended her Complaint to allege that STME purposefully discriminated against "black Africans" because "black Africans" happen to comprise 98% of the population of Ghana. (Doc. 21, ¶30). Lowe even went so far as to allege that STME did not base its "unfounded belief" that she would contract Ebola on the specific country that she was traveling to, i.e., the country of Ghana, but rather "her interaction with 'black African' people generally." (Doc. 21, ¶32). Now, in her third and most recent pleading, Lowe premises her Section 1981 retaliation claim on STME's alleged fear that "Ghanaians had Ebola," which directly relates to the country she was traveling to (i.e., Ghana), and is not an actionable race discrimination claim under Section 1981.

Notwithstanding the Court's specific instruction that a plaintiff "cannot rely on the employer to infer that discrimination has occurred" (Doc. 24, pg. 10) (internal quotation omitted), Lowe's allegations of "protected conduct" would require STME to somehow guess that Lowe was opposing race discrimination when she allegedly told Wuchko that his fear of her contracting Ebola during her trip to Ghana was "ridiculous," that his actions were "wrong" and "not right," and by refusing to cancel her trip.[10] Of course, this presumes – solely for the sake of argument – that Lowe held any good-faith, reasonable belief that she was opposing race discrimination against "black Africans" in the first place, a presumption that is clearly and completely belied by the long and well-developed record of this case of which the Court may take judicial notice. Significantly, Lowe never alleged that she was subjected to race

---

[10] The Court's Order (Doc. 24) was very specific regarding what it would take for Lowe to state a Section 1981 retaliation claim. Even so, rather than avoid the further needless expenditure of resources, Lowe continues to enlarge these proceedings by offering only vague allegations of protected activity, which on their face do not convey any opposition to race based discrimination.

discrimination – much less retaliated against for opposing race discrimination –when she filed her Charge (just over a month after her discharge) or when she filed proposed complaint-in-intervention in the EEOC's prior suit on June 20, 2017, or for that matter when she filed her original Complaint in this action on October 3, 2018.[11] It makes no sense then that STME should have somehow divined that Lowe was opposing race discrimination against "black African" Ghanaians (or "black Africans" generally) at the time of her discharge when Lowe herself only reached this disingenuous conclusion during the course of this litigation more than four years later.

As the SAC makes clear, Lowe's Section 1981 retaliation claim fails as a matter of law because (1) Lowe never communicated any belief to STME that race discrimination was occurring; and (2) because STME would not only be required to infer – but to divine – that Lowe was somehow opposing race discrimination against "black African" "Ghanaians" or "black Africans" generally.

> **2.    Any alleged belief by Lowe that she was opposing race discrimination is neither subjectively nor objectively reasonable.**

A plaintiff must show "that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices" to support a retaliation claim. Little, 103 F.3d at 960 (concluding that employee's opposition to "racially derogatory comment did not constitute opposition to an unlawful employment practice as a matter of law" and employee "did not have an objectively reasonable belief that he was opposing an unlawful employment practice"). This means that the plaintiff "*subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable

---

[11] As discussed, Lowe initially sought to bring a "pure and simple" national origin discrimination claim – not a race discrimination claim – under Section 1981.

in light of the facts and record presented." Id. A plaintiff "may not stand on … ignorance of the substantive law to argue that [her] belief was reasonable." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1317 (11th Cir. 2002). Dismissal is appropriate as a result of a plaintiff's failure to allege that she complained about conduct that could reasonably be regarded as prohibited by Section 1981. See, e.g., Henley v. Turner Broadcasting System, Inc., 267 F.Supp.3d 1341 (N.D.Ga.2017) (dismissing a plaintiff's Section 1981 retaliation claim based on her failure to allege that she complained about alleged race discrimination or conduct that could reasonably be regarded as prohibited by Section 1981); and Butler v. Ala. Dept. of Transportation, 536 F.3d 1209, 1314 (11th Cir. 2008) (employee's complaint about co-worker's use of racial epithets on one occasion was not objectively reasonable and her retaliation claim failed as a matter of law).

The Eleventh Circuit has held that Section 1981 "prohibits discrimination based upon an interracial marriage or association." Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888 (11th Cir. 1986). Here Lowe had no objectively reasonable belief that STME terminated her employment because of her association with a "black African" person when Lowe had no existing association with a "black African" person at the time of her discharge. Thus, Lowe's Section 1981 claim failed as a matter of law on this basis. (Doc. 24, pgs. 5-10).

Proof of intentional discrimination based on race is required to state a Section 1981 claim – not the random emergence of a horrible deadly disease in a region where a particular racial group just happens to comprise a substantial majority of the population. Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999) ("Section 1981 prohibits intentional race discrimination … [and] a showing of disparate impact through a neutral practice is insufficient to prove a §1981 violation because proof of discriminatory intent is essential"). As is clear from the face of Lowe's pleadings, STME never once referred to "black Africans," never made a single

derogatory comment about "black Africans," and never engaged in conduct of any nature suggesting purposeful discrimination against "black Africans." Nonetheless Lowe has repeatedly undertaken to plead a Section 1981 claim based solely on the fact that STME sought to prevent her from traveling to a country in a region grappling with the deadly Ebola virus where "black Africans" happen to comprise 98% of the population. This is not proof of purposeful discrimination against "black Africans." Consider, for example, if STME had sought to prevent Lowe from traveling to a different part of the world grappling with Ebola where 98% of the population happened to be Asian, or Hispanic, or European, or "white American citizen[s]." In this scenario, Lowe would have no Section 1981 claim for race discrimination against "black Africans" because such a claim does not stand on its own. In other words, it is not based on a single allegation of purposeful discrimination against "black Africans" because of their race, and turns entirely on the random emergence of Ebola in West Africa, a region where "black Africans" just happen to comprise a substantial majority of the population. After her original attempt to state a "pure and simple" national original discrimination claim (against Ghanaians) under Section 1981 failed, Lowe opportunistically seized upon this statistic, more than four years after her discharge, to pursue a meritless and arbitrary claim of purposeful race discrimination against "black African" "Ghanaians" – but not the 2% of "Ghanaians" of some other race. This is absurd.

> 3.   **Lowe's Section 1981 association discrimination claim is internally inconsistent.**

Additionally, Lowe's Section 1981 association discrimination claim is based on internally inconsistent allegations that STME erroneously believed that only "black Africans"

had Ebola[12] (Doc. 25, ¶¶29, 34-36) – and that Lowe – a "white American citizen" – could contract – and therefore have Ebola and spread it to America. (Doc. 25, ¶20). Lowe cannot reconcile these allegations, which conclusively establish that she held no subjectively or objectively reasonable belief that STME was engaged in an unlawful employment practice based on race in the first place. It is too late for Lowe to contend that STME's alleged "erroneous belief that **Ghanaians** had Ebola" (Doc. 25, ¶¶22, 25) also contemplates the 2% of Ghanaians who are not "black Africans" without admitting the frivolity of her race discrimination claim. Because Lowe only came up with her race discrimination claim after her original attempt to state a "pure and simple" national origin discrimination claim failed, Lowe's allegations in the SAC are all over the place including her allegation that STME believed only "black Africans" had Ebola, that "Ghanaians" had Ebola, and that Lowe (a "white American citizen") could also have Ebola. Lowe's ongoing struggle to state a retaliation claim is squarely rooted in the fact that her Section 1981 race discrimination claim was frivolous and opportunistic from the beginning, and Lowe held no good faith, reasonable belief that race discrimination against "black Africans" was occurring in any way.

Additionally, in her appeal in *Lowe I*, Lowe argued, *inter alia*, that this Court erred in dismissing the EEOC's ADA association discrimination claim because Lowe was associated with her sister in Ghana whom STME also allegedly believed to be disabled by Ebola. Lowe specifically represented to the Eleventh Circuit that

---

[12] Lowe must necessarily allege that STME erroneously believed that ***only*** "black Africans" had Ebola otherwise her race discrimination claim would fail, *ab initio*. For example, if STME also erroneously believed that the 2% of non-black Africans in Ghana had Ebola – then STME's fear of Lowe contracting Ebola would have to be based on the fact that she was traveling to a country in a region grappling with Ebola and not based on her association with "black African" people.

> [L]owe was traveling to Ghana to visit her sister, her relative, who resided in Ghana, which is the **only** fact Massage Envy used to mistakenly determine that Lowe would contract Ebola [emphasis added]. (Doc. 22-4, pg. 23).

> While Lowe's sister did not have a disability, **Massage Envy perceived Lowe's sister**, with whom she was already associated, and other individuals she would associate with **as disabled** and terminated Lowe because of this association [emphasis added]. (Doc. 22-4, pg. 23; see also, Doc. 22-4, pgs. 10, 21).

Presuming that Lowe's sister is a "white American citizen" like Lowe (and/or a "[non-]black African" person), Lowe's specific representations to the Eleventh Circuit directly contradict her claim in this action that STME believed that only "black Africans" had Ebola or that Lowe could only contract Ebola from "black African" "Ghanaians" in Ghana and is clear evidence of the frivolity of Lowe's Section 1981 associational claim, and concomitant lack of any good-faith, reasonable belief by Lowe that STME was engaged in purposeful discrimination against "black Africans."

**B.     Lowe fails to state a "perceived handicap" claim under the FCRA. [13]**

Disability discrimination claims under the FCRA are analyzed under the ADA framework. Samson, 746 F.3d at 1200, n. 2. An individual must establish that (s)he was subjected to a prohibited action *because of* "an actual or perceived physical or mental impairment …" in order to state a "regarded as" (i.e.," perceived handicap") claim. 42 U.S.C. §12102(3)(A). The law is clear that "in interpreting a statute a court should always turn first to one, cardinal canon before others … courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1248 (11th Cir.

---

[13] It appears that Lowe has now abandoned the FCRA retaliation claim that she slipped into her FAC, which forced the needless expenditure of resources by STME to respond to this claim in its previous Motion to Dismiss. (Doc. 22, pgs. 17-18).

2005). Significantly, the Eleventh Circuit has recognized that proof of an actual or perceived impairment must be determined at the time of the alleged prohibited action. Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) ("a plaintiff must show that, **at the time of the adverse employment action**, [s]he had a disability [emphasis added]..."); see also, Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1113 (8th Cir. 2016) *cert. denied*, 137 S.Ct. 256 (2016) (the "plain language of the ADA prohibits actions based on an **existing** impairment or the perception of an **existing** impairment [emphasis added]").

The EEOC regulations define a physical or mental impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems … or [a]ny mental or psychological disorder…" 29 C.F.R. §1630.2(h)(1) & (2). "**[T]he definition [of impairment] … does not include characteristic predisposition to illness or disease** [emphasis added]." 29 C.F.R. Pt. 1630, Appx. §1630.2(h). "It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." Id. In fact, as explained by the EEOC in its Compliance Manual, "**[a] person may be predisposed to developing an illness or a disease because of factors such as environmental, economic, cultural or social conditions. This predisposition does not amount to an impairment** [emphasis added]." EEOCCM §902.2(c)(2). Any alleged belief by STME that Lowe could or would become predisposed to contracting Ebola because of her then impending trip to Ghana is precisely the type of environmental condition that is specifically excluded from the definition of impairment.

Here Lowe makes no allegation that STME terminated her employment because she had Ebola (i.e., an actual impairment) or because STME believed that she had Ebola (i.e., a perceived impairment). Instead, like the EEOC before her, Lowe seeks to expand the ADA's coverage to a

potential future impairment that she neither had nor was regarded as having at the time of her discharge. This would render the ADA's "regarded as" prong meaningless by eliminating its required proof of causation, i.e., proof that the alleged prohibited action was *because of* an actual or perceived physical or mental impairment. As the Eleventh Circuit explained in <u>Bouchard Transp. Co. v. Updegraff</u>, 147 F.3d 1344, 1351 (11th Cir. 1998), "…we avoid statutory constructions that render provisions meaningless." This ultimate legal issue – based on the same factual predicate – was presented in *Lowe I* and the Court declined to expand the ADA's coverage to "…cases, such as this one, in which an employer perceives an employee to be presently healthy with only the potential to become disabled in the future due to voluntary conduct." <u>STME</u>, 309 F.Supp.3d at 1213. For the same reason the EEOC failed to state a "regarded as" claim in *Lowe I*, Lowe fails to state a "perceived handicap" claim in this action.

**C.      Lowe's FCRA "perceived handicap" claim is barred by collateral estoppel.**

"Collateral estoppel, or issue preclusion, bars the re-litigation of issues of fact or law that were actually litigated and decided in a prior suit." <u>McCulley v. Bank of America, N.A.</u>, 605 Fed.Appx. 875, 877-78 (11th Cir. 2015). In order for collateral estoppel to apply, a party must establish

> (1) The issue at stake is identical to one involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue must have been a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior litigation.

"[B]efore the doctrines of either *res judicata* or collateral estoppel may be asserted against a party, it must be established that the party in the second action was either a party in the previous action **or a privy** of the party in that action [emphasis added]." <u>E.E.O.C. v. Pemco Aeroplex, Inc.</u>, 383 F.3d 1280, 1285 (11th Cir. 2004). Courts apply federal preclusion principles when

determining whether to give preclusive effect to a prior federal judgment. <u>Tampa Bay Water v. HDR Eng'g, Inc.</u>, 731 F.3d 1171, 1179 (11th Cir. 2013).

Generally, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." <u>Griswold v. County of Hillsborough</u>, 598 F.3d 1289, 1292 (11th Cir. 2010) (quoting <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008)). However, there are six exceptions to this general rule against nonparty preclusion including where: "… (3) **the nonparty was adequately represented by someone who was a party to the suit** [emphasis added] …" <u>Id</u>. at 2172-73. Here even the most cursory review of the record in *Lowe I* conclusively establishes that the EEOC took on a representative role in *Lowe I* and adequately represented Lowe's interests.

In an analogous case in the Fifth Circuit, <u>Vines v. Univ. of Louisiana at Monroe, 398 F.3d 700 (5th Cir. 2005)</u>, the court considered whether two individuals had the right to proceed with their state law age discrimination suit after the EEOC lost on summary judgment in a prior federal age discrimination suit that it brought on the individuals' behalf. The state and federal age discrimination statutes at issue were substantively similar and subject to determination under the same legal framework. <u>Id</u>. at 710. The individuals were not a party to the EEOC's suit, had no control over the EEOC's suit, and had been denied the opportunity to assert their state law claims in federal court.[14] <u>Id</u>. at 706. Recognizing that the EEOC is not always to be considered the representative of individuals on whose behalf it files suit, the court concluded that the EEOC had never abandoned the individuals' interests in the prior action and had taken on representative responsibilities that placed it in privity with the individuals by seeking private benefits for them. <u>Id</u>. at 707. As the court explained, neither the EEOC's representative role nor the preclusive

---

[14] Like the instant case, the EEOC in <u>Vines</u> had no authority to prosecute the individuals' state law discrimination claims.

effect of the EEOC's federal suit was changed by the fact the two individuals were not a party to the EEOC's suit and did not have control over it. Id. at 709. Also, the court rejected the individuals' argument that they were not adequately represented by the EEOC because the EEOC voluntarily dismissed its appeal. Id. at 711. According to the court, the EEOC "acted with due diligence and reasonable prudence" by conducting discovery, filing motions for summary judgment and responding to motions filed by the employer. Id. Ultimately, the court determined that collateral estopped barred the individuals from relitigating the same issues of ultimate fact that were previously adjudicated in the EEOC's suit. Id.

Like Vines, the EEOC took on a representative role in *Lowe I* and never abandoned Lowe's interests. The EEOC brought suit on Lowe's behalf premised on Lowe's Charge and sought specific "make whole" relief for Lowe including reinstatement, back-pay, prejudgment interest, out-of-pocket expenses, and compensation for emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and punitive damages. Doc. 4-4, pgs. 6-7. Lowe admits that she is the "person for whom EEOC [was] seeking relief …" Doc. 4-2, ¶¶2-3. Pursuant to 42 U.S.C. §2000e-5, "[t]he EEOC is vested by law with the power to represent aggrieved individuals in civil actions against employers to recover damages for discrimination..."[15] Mohammed v. May Dept. Stores, Co., 273 F.Supp.2d 531, 535 (D.Del.2003) (Title VII case). The EEOC exercises the same enforcement powers under the ADA. 42 U.S.C. §12117(a). Here there is no question that the EEOC exercised its statutory representative authority to seek "make whole" relief for Lowe, thus, placing itself in privity with Lowe.

Unlike the factual scenario in Riddle v. Cerro Wire and Cable Group, Inc., 902 F.2d 981 (11th Cir. 1990), where the court found a "clear divergence" of interests between an individual

---

[15] As recognized by the Vines court, the EEOC's dual role in protecting the public interest and vindicating private claims does not necessarily conflict. Id. at 708.

and the EEOC in a prior suit, there is no such "clear divergence" of interests between the EEOC and Lowe in _Lowe I_. Significantly, in <u>Riddle</u>, the court expressly limited its holding to the particular facts of that case and "express[ed] no opinion whether another case might present facts sufficient to demonstrate an identity of interests and privity between the aggrieved individual and the EEOC …" <u>Id</u>. at 923, n5. According to the court, "[w]e hold only that here … there was a clear divergence of interests …" <u>Id</u>. Riddle specifically acknowledged that privity may exist between an aggrieved individual and the EEOC. The factual scenario in <u>Riddle</u> involved an individual who was not satisfied with the terms of a settlement agreement negotiated by the EEOC during litigation brought by the EEOC on her behalf. The individual retained counsel and made her dissatisfaction clear to the EEOC.[16] <u>Id</u>. at 919. In response, the EEOC informed the individual that she did not have to sign the settlement agreement and could request a right-to-sue letter and institute a private suit against the employer. <u>Id</u>. The court determined that the individual's interests diverged from those of the EEOC when "**she made clear to the EEOC** and [the employer] … that she was dissatisfied with the Commission's handling of her interests." <u>Id</u>. at 923.

Here Lowe contends that her interests diverged from the EEOC's when the Court terminated her motion to intervene as moot, and as a result, she was left unable to pursue her FCRA claim at all or litigate her ADA claim as she saw fit. Doc. 21, ¶¶44-45.[17] In other words,

---

[16] Lowe makes no allegation that she obtained counsel because she was dissatisfied with the EEOC's handling of _Lowe I_. According to Lowe, she did not want the EEOC to handle the matter on its own (Doc. 21, ¶40), which is insufficient to establish a "clear divergence" of interests. Also, as evidenced by the EEOC LOD, Lowe had already obtained counsel (Michele Leach-Pachinger) during the administrative proceedings before the EEOC's suit on her behalf.

[17] Lowe's allegations go directly to the correctness of the Court's prior decision not to rule on her motion to intervene (to raise "factually and substantively identical" claims) before dismissing _Lowe I_. This issue is currently pending before the Eleventh Circuit, and Lowe should not be permitted to pursue the same objective here (proceeding with her claims) that she seeks to accomplish on appeal in _Lowe I_. The fact that Lowe has appealed _Lowe I_ including the denial of the EEOC's proposed second amended complaint (which the EEOC did not even appeal) evidences just how closely aligned Lowe's interests are with those of the EEOC in _Lowe I_.

Lowe contends that her interests diverged from those of EEOC when the EEOC lost the case. But the fact that Lowe was not a party to *Lowe I* and had no control over the EEOC's conduct of *Lowe I* (accepting this allegation as true) neither changes the EEOC's representative role nor the preclusive effect of *Lowe I*. <u>Vines</u>, 398 F.3d at 709. In fact, the determination of privity necessarily involves a nonparty to a prior action.

Also, Lowe's allegations regarding the timing of her purported divergence of interests (i.e., upon the termination of her motion to intervene as "moot") belies any allegation that she was dissatisfied with the EEOC's discovery efforts while the litigation was still viable. Even presuming solely for the sake of argument, if, as Lowe contends, she "**would have**" taken a few depositions that the EEOC did not take (Doc. 25, ¶50) before the Court stayed discovery or "**would have**" amended her complaint to bring a Section 1981 claim (Doc. 25, ¶51), these speculative allegations do not establish inadequate representation by the EEOC or a clear divergence of interests with the EEOC. Not surprisingly, Lowe makes no allegation that she ever informed the EEOC of any alleged divergence in their interests while *Lowe I* was still viable – or any time thereafter. In *Lowe I*, the EEOC zealously represented Lowe's interests by filing an amended complaint, engaging in discovery, taking depositions, filing a motion to compel, responding to the motions filed by STME, and appealing the dismissal of *Lowe I*. Here Lowe is playing Monday morning quarterback to contrive a divergence of interest for no reason other than the EEOC's case was dismissed.

As in <u>Vines</u>, collateral estoppel bars Lowe's state law FCRA "perceived handicap" claim in this action, which is "factually and substantively identical" to the ADA "regarded as" claim at issue in *Lowe I* and involves "common questions of fact and law" (Doc. 4-2, ¶5) and is analyzed under the same legal framework. Lowe's FCRA "perceived handicap" claim and EEOC's ADA

"regarded as" claim arise from the same nucleus of operative fact, i.e., Lowe's discharge on October 22, 2014 because of STME's alleged belief that she could contract Ebola during her impending trip to Ghana, West Africa when West Africa was grappling with an Ebola outbreak, and both call for the same proposed expansion of the ADA's coverage to healthy individuals (who are not regarded as having an impairment at the time of the alleged prohibited action) with only the potential to become disabled in the future due to voluntary conduct. The Court adjudicated this ultimate legal issue on the merits in *Lowe I* declining to expand the ADA's coverage. Accordingly, Lowe's identical "perceived handicap" claim in this action is barred by collateral estoppel. The court may exercise supplemental jurisdiction over Lowe's FCRA to avoid inconsistent judgments and give effect to the "central … purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." Montana v. United States, 440 U.S. 147, 153-54 (1979). STME respectfully requests that the Court exercise supplemental jurisdiction over Lowe's STME FCRA claim and dismiss it, with prejudice.

**D.      Lowe's FCRA perceived handicap claim is barred by res judicata.**

Claims are barred by *res judicata* where (1) the judgment in the earlier litigation was entered by a court of competent jurisdiction; (2) there was a final judgment on the merits in the earlier litigation; (3) both cases involve the same parties or their privies; and (4) both cases involve the same causes of action. Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 892 (11th Cir. 2013). "In the Eleventh Circuit, claims are part of the same cause of action when they 'arise out of the same transactions or series of transactions.'" Andreu v. HP Inc., 272 F.Supp.3d 1329, 1334 (S.D.Fla.2017) (quotation omitted). "It is well settled that *res judicata* turns primarily on the commonality of the *facts* of the prior and subsequent actions, not on the nature of the

remedies sought." In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001). The doctrine of "*res judicata* applies … [to] all legal theories and claims arising out of the same nucleus of operative fact which could have been raised in the prior case." Baloco v. Drummond Co., 768 F.3d 1229, 1247 (11th Cir. 2014) (quotation omitted). "[F]or *res judicata* purposes, claims that could have been brought are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." In re Piper Aircraft Corp., 244 F.3d at 1299 (quotation omitted). *Res judicata* "protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, [and] conserves judicial resources …" (Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 128 (11th Cir. 1999)).

Because Lowe's FCRA "perceived handicap" claim is "factually and substantively identical" to the EEOC's ADA "regarded as" claim, arises from the same nucleus of operative fact, and is analyzed under the same legal framework, it is really the same cause of action as the EEOC's ADA "regarded as" claim for *res judicata* purposes and is barred by the Court's prior adjudication on the merits.[18]

## CONCLUSION

**WHEREFORE**, based on the foregoing, STME respectfully requests that the Court grant its Motion to Dismiss, summarily dismiss Lowe's Second Amended Complaint in its entirety, and with prejudice, and grant all further relief that the Court deems proper including, but not limited to, costs and attorney fees under the standard set forth in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).

---

[18] STME also contends that Lowe's claims in this action are barred by the similar doctrines of waiver and laches.

Dated this 5th day of March 2019

Respectfully submitted,

s/ *Sharon A. Wey*
Sharon A. Wey, Esq.
Florida Bar No.: 0048010
Email: sharon@peolawyers.net
Nikhil Joshi, Esq.
Florida Bar No.: 0123803
nik@peolawyers.net
MILLER TACK & MADSON
3550 Buschwood Park Drive
Suite 135
Tampa, Florida 33618
Telephone: (813) 963-7736
Facsimile: (813) 902-2697
Attorneys for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 5, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notification to all counsel of record including counsel for Kimberly Lowe: Michele Leach-Pachinger, Leach-Pachinger Law & Mediations, PLLC, 4112 53rd Avenue East, #20802, Bradenton, Florida 34204, mlp@lplaw-mediations.com; Ryan D. Barack, Kwall Barack Nadeau PLLC, 304 South Belcher Road, Suite C, Clearwater, Florida 33765, rbarack@employeerights.com; and Michelle Erin Nadeau, Kwall Barack Nadeau PLLC, 304 South Belcher Road, Suite C, Clearwater, Florida 33765, mnadeau@employeerights.com.

s/ *Sharon A. Wey*
Attorney for Defendant
